```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/24/11
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GIOVANNI INDOMENICO and JIHYUN
INDOMENICO et al.,

                          Plaintiffs                            10 Civ. 7886
              - against -
                                                                **OPINION AND ORDER**

123 WASHINGTON, LLC,

                          Defendant.
(and the cases consolidated herewith)
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

On October 15, 2010, Plaintiffs Giovanni Indomenico and Jihyun Indomenico

('Indomenico'), Song Young Joon ('Joon'), Dongil Yoo ('Yoo'), Park Kyoung Sook ('Sook'), Duk

Yong Kim and Mi Kyong Kim ('Kim'), Minsong Yi ('Yi'), Meir Levy and Shaul Levy ('Levy') and

Elayna Zucker and Ira Zucker ('Zucker') (collectively, 'Plaintiffs') filed complaints against

Defendant 123 Washington, LLC ('Defendant') alleging violations of the Interstate Land Sales

Full Disclosure Act ('ILSFDA'), 15 U.S.C. § 1701 et seq. By order dated February 9, 2011, these

cases were consolidated for pre-trial purposes. By motion dated March 3, 2011, Defendant

moves for a Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure ('Fed. R. Civ.

P.') Rule 12(c) dismissing all claims asserted by Plaintiffs in their complaint and granting

judgment in favor of Defendant on its counterclaims. On March 29, 2011, Plaintiffs responded

in opposition to the motion. On April 12, 2011, Defendant submitted reply papers. On August

3, 2011, this Court held oral argument on this motion.

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is denied.

## I.    Background

The underlying facts of this case are generally not in dispute.  The 123 Washington Street Condominium is a newly constructed luxury high rise condominium building located at 123 Washington Street, New York, NY. (Declaration of Michael Fleiss ("Fleiss Decl.") dated March 2, 2011, Ex. 1(A) at ¶ 18.)  The building houses a W Hotel, restaurant, bar, and 222 residential condominium units. (Fleiss Decl., Ex. 1(B) at ¶ 17.)  On July 17, 2007, the residential condominium units were offered to the public by Defendant in an offering plan filed with the Attorney General of the State of New York. (Fleiss Decl., Ex. 1(A) at ¶ 19.)  Plaintiffs are a group of individuals and families who contracted to purchase condominium units in the 123 Washington Condominium in late 2007 and early 2008 for purchase prices exceeding $1,000,000.[1]  The units were not yet constructed at the time the purchase agreements were signed nor did the agreements require that construction would be complete within two years. (Id. at ¶¶ 25, 36.)  Plaintiffs seek rescission of their contract with Defendant on the basis that Defendant failed to perform certain duties as required by ILSFDA.

---

[1] Plaintiffs Indomenico are the contract vendees for Unit 35G, under a purchase agreement dated November 18, 2007 for a purchase price of $1,365,000 with an initial contract deposit of $136.500.00 and an additional deposit of $68,250. (Fleiss Decl., Ex. 1(A) at ¶¶ 21-23.)  Plaintiff Joon is the contract vendee for Unit 40A, under a purchase agreement dated October 15, 2007 for a purchase price of $1,560,000 with an initial contract deposit of $108,200 and an additional deposit of $202,800. (Fleiss Decl., Ex. 2(A) at ¶¶ 17-19.)  Plaintiff Yoo is the contract vendee for Unit 36A under a purchase agreement dated November 6, 2007 for a purchase price of $1,500,000 with an initial contract deposit of $150,000 and an additional deposit of $150,000. (Fleiss Decl., Ex. 3(A) at ¶¶ 17-19.)  Plaintiff Park Sook is the contract vendee for Unit 51A under a purchase agreement dated October 23, 2007 for a purchase price of $1,725,000 with an initial contract deposit of $345,000. (Fleiss Decl., Ex. 4(A) at ¶¶ 20-21.)  Plaintiffs Kim are the contract vendees for Unite 46A under a purchase agreement dated November 2, 2007 for a purchase price of $1,650,000 with an initial contract deposit of $330,000. (Fleiss Decl., Ex. 5(A) at ¶¶ 17-18.)  Plaintiff Yi is the contract vendee for Unite 53A for a purchase price of $1,765,000 with an initial contract deposit of $176,500 and an additional deposit of $176,500. (Fleiss Decl., Ex. 6(A) at ¶¶ 17-19.)  Plaintiffs Levy are the contract vendees for Unit 52A under a purchase agreement dated November 25, 2007 for a purchase price of $1,736,300 with an initial contract deposit of $260,445. Plaintiffs Levy are also the contract vendees for Unit 52B under a purchase agreement dated November 25, 2007 for a purchase price of $2,483,200 with an initial contract deposit of $372,480. (Fleiss Decl., Ex. 7(A) at ¶¶ 14-15.)  Plaintiffs Zucker are the contract vendees for Unit 48F under a purchase agreement dated November 24, 2007 for a purchase price of $2,161,250 with an initial contract deposit of $108,062.50. (Fleiss Decl., Ex. 8(A) at ¶¶ 14-15.)

A.     **ILSFDA**

ILSFDA was enacted in 1968 and was "designed to prevent false and deceptive practices

in the sale of unimproved tracts of land by requiring developers to disclose information needed

by potential buyers." Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla., 426 U.S. 776, 778

(1976).  The purpose of the Act was "to protect purchasers from unscrupulous sales of

undeveloped home sites, frequently involving out-of-state sales of land purportedly suitable for

development, but actually under water or useful only for grazing." Beauford v. Helmsley, 740 F.

Supp. 201, 209 (S.D.N.Y. 1990) (quoting Winter v. Hollingsworth Properties, 777 F.2d 1444,

1447 (11th Cir. 1985)).

ILSFDA requires developers selling "lots" in a subdivision to register the sale of such

lots with the Secretary of HUD. 15 U.S.C. §§ 1703(a)(1)(A), 1704-1706.  Additionally, the

developer must provide purchasers with a printed property report prior to the signing of a

purchase agreement or contract.  15 U.S.C. §§ 1703(a)(1)(B), 1707.

Although originally concerned with the development of raw undeveloped land, in 1978

Congress amended ILSFDA in several respects.  The "Improved Lot Exemption" found in §

1702(a)(2) provides that the provisions of ILSFDA shall not apply to "the sale or lease of any

improved land on which there is a residential, commercial, condominium, or industrial building,

or the sale or lease of land under a contract obligating the seller or lessor to erect such a building

thereon within a period of two years."  15 U.S.C. § 1702(a)(2); Winter, 777 F.2d at 1447.

Any contract or purchase agreement for the sale of a lot which does not meet the

exemption requirements of § 1702[2] and is in violation of ILSFDA is subject to rescission by the

_____

[2] See 15 U.S.C. § 1702 lists the exemptions that fall outside the scope of ILSFDA.  Defendant does not meet the
requirements to be exempt from the statutory provisions.

3

purchaser within a two year period from the date of signing. 15 U.S.C. § 1703(c).   Furthermore,

"the court may order damages, specific performance, or such other relief as the court deems fair,

just, and equitable." 15 U.S.C. § 1709(a).

Plaintiffs' complaints allege that Defendant failed to properly register with the U.S.

Department of Housing and Urban Development ("HUD") as required by ILSFDA prior to

entering into purchase agreements. (Def. Mem. at ¶ 2.); See 15 U.S.C. §§ 1703(a)(1)(A), 1704-

1706.  On October 11, 2007, Defendant submitted its Initial Registration Application to HUD.

(Fleiss Decl., Ex. 1(A) at ¶ 78.) On November 7, 2007, however, HUD informed Defendant that

the application was materially deficient. (Id. at ¶¶ 78-79.)  Due to this deficiency, HUD ordered

Defendant not to sell any of its lots until the deficiencies were remedied. (Id. at ¶ 79.)  On

December 5, 2007, HUD provided notice to Defendant that its registration had been accepted.

(Id. at ¶ 80.)  Plaintiffs purchase agreements, however, were all signed and dated during the

period in which the HUD suspension was in effect—thus in violation of HUD's prohibition

against sales until these deficiencies were remedied.  Plaintiffs seek to terminate the contract

with the Defendant on this ground.  Further, Plaintiffs contend that Defendant violated ILSFDA

by failing to furnish the required property report to Plaintiffs in advance of the signing of their

purchase agreements. See 15 U.S.C. §§ 1703(a)(1)(B), 1707.  Plaintiffs argue that Defendant did

not meet any of the exemption requirements under 15 U.S.C. § 1702 and therefore must comply

with the relevant sections of ILSFDA. (Fleiss Decl., Ex. 1(A) ¶¶ 33-51.)

Section 1703(c) requires that if the property report requirement of ILSFDA is not

satisfied, purchasers or lessees may revoke their contracts or agreements within a statutorily

prescribed two year period and must be apprised of this right in the purchase agreement. 15

U.S.C. § 1703(c).  Plaintiffs Indomenico and Sook submitted their revocation notices in a proper

manner within the two year period. (Fleiss Decl., Ex. 1(A) at ¶ 53; Fleiss Decl., Ex. 4(A) at ¶ 50.)  Plaintiffs Joon, Yoo, Kim, Yi, Levy, and Zucker did not file timely revocations, but maintain that their purchase agreements should be equitably revoked due to the failure of the purchase agreements to apprise them of their statutory right to revoke within the two year period. (Fleiss Decl., Ex. 2(A) at ¶¶ 62-64; Fleiss Decl., Ex. 3(A) at ¶¶ 61-63; Fleiss Decl., Ex. 5(A) at ¶¶ 60-62; Fleiss Decl., Ex. 6(A) at ¶¶ 61-64; Fleiss Decl., Ex. 7(A) at ¶ 62; Fleiss Decl., Ex. 8(A) at ¶ 62.)

Defendant argues that ILSFDA does not apply to the sale of condominium units and therefore it has no obligation to comply with the requirements of the statute. (Defendant's Memorandum of Law in Support of Defendant's Motion for Judgment on the Pleadings ("Def. Mem.") at 2.)  Defendant also argues that applying the requirements of ILSFDA to condominiums, namely § 1703(d)(1), would place ILSFDA in direct conflict with certain provisions of the New York Real Property Law and regulations promulgated by the New York State Attorney General which apply to condominiums located in New York.  Defendant contends that this conflict results in an "absurd result" which could not possibly have been the intent of Congress. (Def. Mem. at 13-15.)

## II.     Standard of Review

The standard for granting a motion for judgment on the pleadings under Fed. R. Civ. P 12(c) "is identical to that of a Rule 12(b)(6) motion for failure to state a claim." Patel v. Contemporary Classics of Beverley Hills, 259 F.3d 123, 126 (2d Cir. 2001); Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994); see also Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998).  "In both postures, the district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." Patel, 259 F.3d

at 126.  A Rule 12(c) motion should not be granted unless the Court is "satisfied that the complaint cannot state any set of facts that would entitle [the plaintiff] to relief." Id.

### III.      Discussion

Defendant urges this Court to disregard HUD's interpretation of ILSFDA and numerous judicial decisions holding that condominiums in New York City fall within the scope of the statute.  Defendant argues that the plain language of the statute is clear and no further analysis is necessary.

### A.      ILSFDA Applies to the Purchase and Sale of Condominium Units.

### 1.      Interpreting the Term "Lot" in ILSFDA

At issue is whether condominium units are subject to the requirements of ILSFDA and therefore whether Defendant was under a duty to register with HUD or provide Plaintiffs with a property report in their purchase agreement. (Def. Mem. at 7.)  The crux of this case lies in the interpretation of the word "lot" found in ILSFDA.  Defendant argues that the express terms of ILSFDA limits its applicability to "lots", a category of property which Defendant contends cannot include condominiums. (Id.; Transcript of June 29, 2011 Oral Argument ("Tr.") at 4-7.)

ILSFDA provides that the sales of "lots" within a "subdivision" are subject to certain requirements, however, the statute provides for no definition of the term "lots."  ILSFDA does, however, define the term "subdivision" as "any land which is located in any State or a foreign country and is divided or is proposed to be divided into 'lots', whether contiguous or not, for the purpose of sale or lease as part of a common promotional plan." 15 U.S.C. § 1701(3).  Defendant urges the Court to consider the definition of "lot" by way of reference to ILSFDA's definition of "subdivision". (Def. Mem. at 8; Tr. at 4.)  Defendant argues that the word "land" in the definition of "subdivision" refers to a physical area or parcel on the earth's surface, which is not covered by

6

water.  Accordingly, Defendant contends that this definition cannot possibly encompass units in a condominium. (Id.)

ILSFDA has been applied to the sale of condominiums in this district and the Court is not aware of any authority holding that condominiums fall outside the scope of the Act. See Winter, 777 F.2d at 1447-48 ("We find that HUD's inclusion of condominiums within the ILSFDA is a reasonable interpretation of Congress' original intent in enacting the statute and the only defensible interpretation given subsequent events"); Nickell v. Beau View of Biloxi, L.L.C., 636 F.3d 752, 754 (5th. Cir. 2011) ("Regulations were adopted that included condominium units within the definition of 'lots' under ILSA [ILSFDA], a definition we conclude is consistent with the statute"); See also Bodansky v. Fifth on the Park Condo, LLC, 635 F.3d 75, 79 (2d. Cir. 2011); Nu-Chan, LLC v. 20 Pine Street LLC, No. 09-477, 2010 WL 3825734, at *2-*3 (S.D.N.Y. Sept. 30, 2010); An v. Leviev Fulton Club, LLC, No. 09-1937, 2010 WL 3291402, *1 (S.D.N.Y. Aug. 10, 2010); Cruz v. Leviev Fulton Club, LLC, 711 F. Supp. 2d 329, 331 (S.D.N.Y. 2010); Beauford v. Helmsley, 740 F. Supp. 201, 209 (S.D.N.Y. 1990).

**2.     HUD Has Determined that ILSFDA Applies to the Sale of Condominiums**

Under § 1715(a) of ILSFDA, the administration of the statute falls under the Secretary of HUD, including the powers of "investigating, hearing, determining, ordering, or otherwise acting as to any work, business, or matter under this chapter." 15 U.S.C. § 1715(a).  HUD has promulgated regulations that define a "lot" as "any portion, piece, division, unit, or undivided interest in land if such interest includes the right to the exclusive use of a specific portion of the land or unit." 24 C.F.R. § 1710.1(b).  A condominium purchase agreement does give the owner exclusive use of a specific portion of the unit.

Furthermore, the Office of Interstate Land Sales Regulation ("OISLR"), a division of

HUD, issued an advisory opinion in 1972 which stated:

> We agree that the key term is "lots" in determining whether the sale of a condominium unit can be equated with the sale of a lot in the subdivision within the meaning of the act. We do not, however, agree that the concepts and characteristics of a lot and a condominium are mutually exclusive and that, therefore, a "unit" in a condominium cannot be considered a "Lot."

OISLR Exemption Advisory Opinion No. 1710.1(k) at 5 (August 20, 1972) (quoted in Winter v.

Hollingsworth Properties, Inc., 587 F. Supp. 1289, 1291 (S.D.Fla. 1984). Moreover, HUD has

issued ILSFDA interpretive guidelines which further clarify "lot" to mean "any portion, piece,

division, unit or undivided interest in land if such interest includes the right to the exclusive use

of a specific portion of the land or unit. This applies to the sale of a *condominium* or cooperative

unit or a campsite as well as a traditional lot." 61 Fed. Reg. 13602: See Winter, 777 F.2d at

1447-1449 (emphasis added). Moreover, since 1969 HUD has consistently maintained that

condominiums are subject to ILSFDA:

> The application of the Act to condominiums has been consistent OILSR policy since the issue was first raised in 1969. The bases for this position are that condominiums carry the indicia of and in fact are real estate, whether or not the units therein have been constructed. A condominium is accordingly viewed by OILSR as equivalent to a subdivision, each unit being a lot. Adverse comment, particularly from builders, asserts that condominiums are equivalent to houses and the sale of houses was not intended to be covered by the Act. However, the right to condominium space is a form of ownership, not a structural description. This condominium concept is employed as an ownership form for completely horizontal developments and even for campgrounds. Congress recognized the need to exempt professional builders from the Act and provided an appropriate exemption (15 U.S.C. 1702[(a) (2)]). For a condominium unit sale to be exempted from the Act, it must accordingly qualify for exemption; i.e., either it must be completed before it is sold, or it must be sold under a contract obligating the seller to erect the unit within two years from the date the purchaser signs the contract of sale.

8

Winter, 777 F.2d at 147 (quoting 38 Fed. Reg. 23,866).

### 3.   HUD's Determination is Entitled to Deference

Once a Court determines that a statute is ambiguous, it must determine the level of deference to be granted to the agency's interpretation of the statute it administers. United Airlines, Inc. v. Brien, 588 F.3d 158, 172 (2d. Cir. 2009).  Defendant argues that HUD's definition of "lot" to include condominiums is inconsistent with the intent of Congress and thus is not entitled deference from this Court. (Def. Mem. at 20; Tr. at 11.)  Chevron U.S.A. v. National Resources Defense Council, 467 U.S. 837 (1984), held that an agency that is charged with administration of a statute is entitled to deference as to their interpretation of that statute if certain circumstances are present.  "First, always, is the question whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43.  If Congress has not spoken directly on the issue, a Court must determine whether the agency's interpretation is based on a permissible construction of the statute. Id. at 843.  "In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." Id. at 844.

Agency interpretations are entitled to Chevron deference only if they carry the force of law.  Interpretations found in opinion letters, guidelines, manuals, and policy statements do not carry the force-of-law and are "entitled to respect . . . under Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944), but only to the extent that those interpretations have the power to persuade" Christensen v. Harris County, 529 U.S. 576, 587 (2000) (internal quotation marks omitted).  Under either Chevron or Skidmore deference, this Court finds no reason why HUD's

9

interpretation that condominiums fall under the auspice of ILSFDA, which has been followed by courts since 1969, should be disturbed.

### 4.      Defendant's Statutory Interpretation Argument Fails

Defendant argues the Plaintiffs' claims should be dismissed because ILSFDA by its plain and unambiguous terms does not apply to the sale of condominium units.  Defendant asserts that the express terms of ILSFDA limit its applicability to "lots", a category of property which Defendant contends does not include condominiums. (Def. Mem. at 7; Tr. at 4.)  As noted *supra*, Defendant attempts to equate the term "land" with the term "lot" by way of mutual presence in the definition of "subdivision" found in ILSFDA.  Defendant argues that "lots" are parcels or pieces of "land" that when added together form a "subdivision." (Def. Mem. at 8; Tr. at 4.)

In support of this argument, Defendant cites to numerous dictionary definitions which generally state that "land" is any part of the earth's surface that is not covered by a body of water. (Id.)  Defendant therefore posits that a condominium unit could not possibly be construed as "land" if given its commonly understood meaning.  Furthermore, Defendant argues that ownership of a condominium unit includes ownership of an undivided percentage interest in the condominium's common elements, including the land on which the condominium sits. (Def. Mem. at 10; Tr. at 5.)  This feature of condominium ownership, Defendant asserts, precludes condominium owners from exclusive use of any of the common elements, including ownership of the land. (Id.)  Therefore, Defendant argues that the plain meaning of the word "lot" in the statute precludes the Court from deferring to HUD's interpretation of the term "lot" as contrary to Congressional intent. See Rubin v. United States, 494 U.S. 424, 430 (1981) ("When we find the terms of a statute unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances.") (internal citations omitted).

Plaintiffs, however, counter that Defendant's focus on distinguishing condominiums from "land" is misplaced, because Defendant fails to include any alternate definitions of "land." Plaintiff also cites to numerous dictionary definitions, including Black's Law Dictionary (9th Ed. 2009), which alternatively defines land as "an estate or interest in real property," a definition that would encompass an interest in a condominium unit. (Plaintiffs Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Pleadings ("Pl. Mem.") at 2-3; Tr. at 20.) Additionally, the legislative history of ILSFDA also employs both the terms "land" and "real estate." Winter, 777 F.2d at 1447 (citing Conf. Rep. No. 1785, 90th Cong., 2d Sess. (1968)).

The Court also takes note of Congress' 1978 Amendment to ILSFDA discussed *supra*, where the addition of "condominium" to the "improved lot" exemption would seem to suggest "that Congress has acquiesced to HUD's interpretation." Nu-Chan, LLC, 2010 WL 3825734, at *3. Plaintiff's argues that Congress was aware of HUD's consistent interpretation and therefore exempted completed condominiums from the scope of ILSFDA thus indicating that Congress agreed ILSFDA did apply to uncompleted condominiums. (Pl. Mem. at 11-12; Tr. at 22-23.); See 15 U.S.C. § 1702(a)(2); Winter, 777 F.2d at 1449-50.

**4.     Conflict with New York Law is not Evidence of Congressional Intent**

Defendant argues that the application of ILSFDA to condominiums would result in "patently absurd" consequences due to an overlap in the governing provisions of New York law. (Def. Mem. at 13.)   While the Second Circuit has acknowledged that condominium sponsors could be burdened by two sets of law; it held that "Congress was aware of such a possibility and explicitly provided a solution, allowing states to request HUD to certify that the state's disclosure requirements are 'at least substantially equivalent' to ILSA's [ILSFDA] disclosure requirements

11

or otherwise 'provide sufficient protection for purchasers and lessees' with respect to such matters." Bodansky, 635 F.3d at 86 (citing 15 U.S.C. § 1708(c); 24 C.F.R. § 1710.500).

Ultimately, the Supremacy Clause dictates that a Federal Statute will preempt any such New York Law. U.S. Const. art. IV, cl. 2.  The Supreme Court has held that "[i]t is beyond peradventure that federal power over commerce is superior to that of the States to provide for the welfare or necessities of their inhabitants, however legitimate or dire those necessities may be." Gonzales v. Raich, 54 U.S. 1, 29 (2005) (internal citations omitted).

Regardless, any such arguments which attempt to infer congressional intent based on conflicts between New York law and ILSFDA's requirements are not persuasive.

## IV.    Conclusion

The Court is satisfied that the legislative history and HUD's interpretative analysis amply dictate that ILSFDA applies to condominiums.  The true reasoning behind Plaintiffs decision to rescind their contract is not for this Court to decide.  Accordingly, Defendant's Motion for Judgment on the Pleadings is denied.

IT IS SO ORDERED.

Dated:  New York, New York
        August 2011

                                        _____
                                        Robert P. Patterson, Jr.
                                        U.S.D.J.

12

Copies of this order were faxed to:

*Counsel for Plaintiff:*

Adam Leitman Bailey
Adam Leitman Bailey, P.C.
120 Broadway, 17th Floor
New York, NY 10271
(212) 805-0365
Fax: (212)-825-0999

John M. Desiderio
Adam Leitman Bailey, P.C.
120 Broadway, 17th Floor
New York, NY 10271
(212) 805-0365
Fax: (212)-825-0999

William J. Geller
Adam Leitman Bailey, P.C.
120 Broadway, 17th Floor
New York, NY 10271
(212) 805-0365
Fax: (212)-825-0999

Keith B. Stein
Beys, Stein & Mobargha LLP (LEXINGTON)
405 Lexington Avenue, 7th Floor
New York, NY 10174
(212)-387-8200
Fax: (212)-387-8229

Nader Mobargha
Beys, Stein & Mobargha LLP (LEXINGTON)
405 Lexington Avenue, 7th Floor
New York, NY 10174
(212) 387-8200
Fax: (212) 387-8229

*Counsel for Defendant:*

Staci Lynn Yablon
Dewey & LeBoeuf, L.L.P.(NYC)
1301 Avenue of the Americas
New York, NY 10019

(212)-259-6363
Fax: (212)-259-6333

Jeremy Sage Rosof
Dewey & LeBoeuf, L.L.P.(NYC)
1301 Avenue of the Americas
New York, NY 10019
(212)-259-6363
Fax: (212)-259-6333

14